Please report my name is Jessica Fortier for the appellant. I'd like to reserve 3 minutes for rebuttal. As your honors are aware, we've raised a multitude of issues here. I'm ready to address any of them, but if there is one in particular your honors are most interested in me starting with, I'd be happy to do so. Let me start with what I think is sort of the guide that we would use to resolve this case. And that would be Justice Joe Gordon's decision in the Brothers case. And I think Justice Gordon, you know, laid out the law very clearly and I find no basis to call into question anything that he said and I think it all applies to this case. So let me start with what I believe is a real problem with your plain error claim. Okay. Because plain error cannot mean, and this is what you say on your plain error claim where you say that the evidence against Brandon was not overwhelmed. And of course we know, and it sounds like you're trying to make a prong one argument, and yet we know that under prong one it is closely balanced. And when you say it's not so overwhelming, you in fact are extending that range of cases that would fall under plain error review regarding the evidence. It's not so overwhelming, I mean, to the extent that the range of evidence is exculpatory to inculpatory and at the far extreme of inculpatory is overwhelming. And you say it's not so overwhelming. Well, that puts it near overwhelming. And plain error one is only closely balanced, which is at the mid-range. What you're trying to do is extend it a little further to allow plain prong one review, and I just don't find any basis for that. Okay, and I understand what you're saying. And in this case, actually, I would argue that the evidence here wasn't closely balanced because there was no evidence against my client. Really? Well, you take a look at Justice Gordon's decision, and there's no even suggestion that that case was closely balanced. And I understand that there were simultaneous jury trials? No, there weren't. I thought there were between these two defendants. No, there weren't. This is a separate trial completely. That was Coleman, probably. Yes, it was another case. But in this specific case, his brother Jamie was tried before Brandon, three years earlier. It's unlikely that the evidence would differ much. Actually, no. I'm sorry, Your Honor, but it did. Correct me there, too. In his brother's trial, Jamie's trial, what actually came in was the specific gun that was used in the crime that was found at Jamie's house, and it matched the bullet in the victim's head. And it wasn't introduced in this case? It was not, Your Honor. There was testimony about the gun being put under the mattress in this case. There was. His brother put it under the mattress. But you're not suggesting that the presence of the gun made it overwhelming in that case and doesn't make it overwhelming in this case? No, there's additional evidence as well, Your Honor. In Jamie's case, Jamie actually confessed to murdering Tyree, and that could come in against him because he confessed to committing these murders. In Brandon's case, he never made any such confession whatsoever, and there was no confession that came in against him. He made no statements that he committed any act. Then let me ask you this, because this is really a key question regarding plain errors. What makes this case, in your assessment, a closely balanced case, even though you don't argue it? And I think I may hold you to that, but what would make this case a closely balanced case in the event you were able to revise your brief? Well, I apologize if I didn't specify that it was closely balanced. What makes this case closely balanced? It is closely balanced here because of the fact that physical evidence linking my client to the crime. Does the absence of evidence make something closely balanced? The combination of both. More evidence would make it overwhelming, because I'm sure. But why would the absence of evidence make anything closely balanced? Well, here there's absence of any evidence. It's not just physical evidence. There's absence of physical evidence. There's absence of any admissions from my client. Once again, why is the absence of evidence, why does that lead to a closely balanced suggestion? Reasonable doubt exists for everyone. And there's always going to be the absence of evidence, because absence of evidence exists. But you have to look at what is the state's evidence that was introduced. And what was introduced was substantial amount of evidence linking him to this offense, not by himself, certainly not as the shooter. Right. But with his brother and a third individual. And that third individual came into court, I believe, confusing the cases, and testified. Actually, it was a little incorrect. And the girlfriend. The evidence here is not, the evidence in this case was different than Jamie's, because in this case, in Brandon's case, the witnesses who testified, all of their testimony was completely contradictory to one another. If you believe one, you can't believe another one. They did not immediately identify any of either Jamie or Brandon. And they all had reason to falsely identify Brandon or kill Tyree themselves. Why don't you talk about the armed robbery and the aggravated vehicular hijacking? I think that you've got a pretty reasonable argument that there was no proof on either one of those under the cases that we looked to. I would agree with you, Your Honor. Well, what, I mean, I think you have some strong arguments there. The robbery is based on what? The armed robbery, they based it on the taking of money. And it was Jamie, his brother's statements to Lakeisha that he stole $3,000 from Tyree after he shot him. That's one of the statements that you believe should not be used? Correct. It was definitely inadmissible and should not have come in. And that was the only evidence whatsoever that there was any armed robbery. And it wasn't that testimony that he was going to take? Or what did he say in his statement? He actually admitted to Lakeisha that he took $3,000. All right. So that's the only evidence of an armed robbery? Correct. A statement of a co-defendant that you believe is clearly inadmissible? Correct. Exactly. And there is, as the State points out, some evidence of some intent to commit an armed robbery. But intent is not the same as a commitment. Yes. From his statements beforehand? Correct. He was going to take care of her or something like that? Right. Take care of business, which we don't know what that means either. And there was testimony that in the car the police officer recovered a burnt wad of money? Correct. Tyree himself. So there was no testimony anywhere that anyone ever said that they actually took something? Correct. Other than the statement of the co-defendant? Yes. Your answer is absolutely correct. And here's where absence of evidence might come into play. Because if there was evidence that Mr. Brandon McCarter went out and bought a car with cash, that might seem to be circumstantially supporting a charge of robbery. But in the absence of such evidence, all you're left with are those statements that you find cannot be given any weight. Right. In terms of proving this offense. And this goes back to the plain error as well, because in order to – I don't have to use the plain error. No, I understand that. Is there any case that you're aware of that says that a statement, I'm going to do something, can be used as circumstantial evidence guilty of a trial that it was actually done? Definitely not, Your Honor. I mean, people of East Sargent, for the corpus delicta, you have to have in addition to a confession that you committed something, you have to have some proof that beyond reasonable doubt that you actually committed this crime. And that's not the case here. Let me go back to plain error, because I don't mean to suggest that there is no plain error argument to be made here. Okay. I'm just suggesting that it can't be under prong one. Okay. It has to be under prong two. Okay. And Justice Gordon made clear that if a defendant can successfully prove ineffective assistance to counsel, this is considered a substantial impairment of fundamental rights, thus satisfying the second prong of Aaron Test and triggering the plain error rule. Prejudice, though, is the key for both ineffective assistance and second prong. And that's right. That's what I was trying to get to. That's what I was trying to get to when we were speaking of armed robbery. I went back to the plain error, because the prejudice here is. Well, I agree with Justice McBride that you don't need plain error for a robbery. Right. No, I'm sorry. I'm not saying that. What I'm trying to say is that under the plain error, to reverse under the plain error for issue number two with the Bruton violation, you have to prove prejudice that the court actually considered some of this inadmissible evidence in reaching the outcome. And my proof is the fact that he did find my client guilty of the armed robbery. That's where that comes into play. I would also argue that more proof of prejudice is. What if that were just proof of trial error as opposed to what you just asserted? Couldn't the judge have simply made a mistake? He could have, but then he made two mistakes, because the other mistake is that he found him guilty of concealment of a homicidal death. The only evidence of concealment of a homicidal death. I don't know about the concealment. Pardon me? I don't know about the concealment. What? Whether you can argue that no rational prior fact could have found concealment. The only admissible evidence, and even the state in their brief, the only evidence they rely on is the fact that Tyree, that supposedly Jamie put Tyree's foot on the pedal and made him go forward. Wasn't there testimony about letting the car go down? No, the testimony actually, the admissible testimony that could come in or the inadmissible testimony? No, the admissible testimony. Isn't there testimony that this car was shoved, that the engine was running, and that they kind of pushed it on its way? No, the admissible testimony was that my client. You haven't heard that from the record at all? I don't believe so, Your Honor. My client, what he said, or allegedly said to his brother, was that they were in the car, and it happened a split second. His brother, Jamie, sitting behind Tyree, shot him in the head, and all of a sudden the car accelerated. They couldn't have been expected to know that the car was going to all of a sudden accelerate when they shot him. Was there testimony about throwing the T-shirt in? No, it was actually, Brennan allegedly told his brother that he accidentally left the T-shirt in the car and after it went into the ditch and hit the tree, he thought, oh, no, I left my shirt there, and he ran and got his shirt. There's no testimony at all. Where did he leave the shirt on fire? Where did the fire come from? There's nothing that the evidence is so insufficient here. We have no idea except for the fire inspector, the stipulation came in. Why couldn't that be? Because he's already dead. We all know how he died. Why couldn't the setting of fire, which is supported by the inspector's testimony, why isn't that sufficient to support a concealment of a homicide? Because they didn't light the car on fire. The fire inspector did not testify that it was other liquids. It was combustible. The car hit the tree and combustible fire. I thought he said it was set afire by combustible material. The cause was the car hitting the tree and it combusting. So our guess is that the gas tank is what exploded. You said that the only testimony about how the car went into the ravine was that what? Well, my client says that when Tyree was shot, all of a sudden the car accelerated and they would jump out quickly to save themselves. So that's how it ended up in the ravine. They didn't realize it was going to go into the ravine. The inadmissible testimony that came in was from Jamie or Lakeisha, Jamie telling Lakeisha that he put Tyree's foot on the gas pedal and started the car and made it drive. But again, that was inadmissible. It should not have come in. And the fact that he was found guilty of concealment of homicidal death proves prejudice. Well, on the other count, I'm not convinced about the concealed account, but on the other count of aggravated vehicular hijacking, there aren't really that many cases out there interpreting the statute. Right. How would you summarize your argument on this account? Basically, we would look to the legislator's intent here and what they were trying to ward against in formulating the statute, and that was a forcible taking from a person of the vehicle. And if you look at the language that cooks people, it cooks them inside. Are you saying that the taking cannot happen with the vehicle owner inside the vehicle? Sure. And that's what takes us out of it? No, it doesn't. There's only a couple of cases out there, and they indicate that the intent is where someone is actually taking the car to gain possession, to hijack it. So what? Not to have somebody drive around it. Doesn't the kidnapping encompass that? I mean, if you're taking somebody and you're keeping them in their car to bring them somewhere else to do harm to them, wasn't that what the kidnapping statute, wouldn't that include that type of offense as opposed to vehicular hijacking? No. The specific language of the kidnapping would be to secretly confine against your will. You can do that to somebody in using their own car. Right, and I agree with you. And there's cases like between Worland and Pew where the car was used, but it was where the victim was put in the trunk or pushed down to conceal their face in the backseat of the car. There was no evidence in here that anything that Tyree was always the driver of the car and remained visible. That legislation that was created for the vehicular hijacking occurred at a time when there was a rash of people smashing windows, telling people to get out of their cars, and then actually taking the car away and sometimes leaving the people in and sometimes leaving them out. But the point was to get at the idea of actually hijacking a car in that kind of fashion. Okay. Well, I know what the legislation said. I know the intent. I happened to write a dissent in the Cooksey case, and there have only been a few other cases interpreting the statute. And I don't believe that the statute was intended to encompass this kind of a factual scenario. But we'll hear from the states. Let me ask you this. Why isn't her statement regarding what she observed outside of her door, Tyree pulling in for the second time, and then seeing the car come in right behind him and then individuals, armed individuals, basically driving away with Tyree in his own vehicle, why isn't that in the light most favorable to the state sufficient to support vehicular hijacking? It would be if her testimony was reliable or credible. Okay, so that's my point. That is her third statement. You have to disregard her testimony. But if her testimony is reliable, then that is sufficient, if it's reliable. It could be. However, you've just sort of conceded something, but the Cooksey case clearly says that the intent of the legislature was to create a new offense when someone forcibly removes, we don't have that in this case, removes someone from their car or otherwise forcibly dispossesses someone of their car. And I agree. I'm sorry. I thought Your Honor was speaking of aggravated kidnapping. We're kind of going back and forth between that and the vehicle. I asked whether vehicular hijacking must occur outside the presence of the victim. That's what you're saying. No, it's not vehicular hijacking. It's in the presence of another. So the victim has to be standing there and be forced away from the vehicle. Right. The victim cannot be taken away in his own vehicle. According to the statute, it says taken from the person or the immediate presence of another. Well, I thought that was Justice McBride's point. I'm agreeing with her. In your brief, I noticed that you conceded a couple of issues. You said that if the aggravated kidnapping based on armed robbery could not stand. You did say that because you have an argument about the armed robbery, but you did concede later. And I'm not criticizing you for this. I'm pointing it out. You conceded that there was another count of aggravated kidnapping that was not based on armed robbery. Correct. And you agreed that in that instance, that count could stand. Correct. Yes. So the ones you're really attacking are the armed robbery, the aggravated vehicular hijacking, and, of course, the concealment of homicide. And the aggravated kidnapping. I'm not sure if you said that as well. But based on the armed robbery. No. In general, aggravated kidnapping, they did not prove it. Even with armed with a firearm, they did not prove aggravated kidnapping. I thought you conceded that there was a firearm or that there was another count based on. No. We conceded that aggravated kidnapping was not proven beyond a reasonable doubt. We conceded that the last issue about the armed robbery being predicated on aggravated vehicular kidnapping. Excuse me. But you did agree that a kidnapping count could stand. No. No, I thought you did. Because if you take the. . . you don't think there was evidence of a kidnapping? I do not. Oh, all right. You're right. Okay. Because there was no secret confinement. If you believe Ernest's testimony, it wasn't even against his will. Ernest says that Tyree freely drove them around because he was going to get money from them. So if you believe that testimony instead of Lakeisha's five other statements that she made. . . Our test isn't what we believe. It's whether there's a sufficient basis that any rational prior fact could have concluded that there was a kidnapping here. And I don't believe that you can, considering that there are so many different statements. They were inconsistent, contradictory. And none of them would meet the secretly confinement. And also, the aspertation here was incidental to the other felonies, just like people of E. Smith. Almost exactly like people of E. Smith. The court found it was a clear gist that it was a robbery here, not a kidnapping. Even though it may have met some of the intricate details of a kidnapping, it wasn't. . . The purpose of it was not to kidnap. They drove around for 20 minutes, and it was. . . Well, what was the purpose here? It was. . . If we believe anybody, what was the purpose here? An armed robbery? Just like in people of E. Smith. Or was it a murder? So now you're saying the purpose was an armed robbery. It could be both. But there was no evidence of an armed robbery. It could be both. I mean, definitely the offense could have been an armed robbery and murder. That's not an aggravated kidnapping. And the aspertation was incidental to either or both of those crimes. All right. We'll give you time for a vote. Good morning, Your Honors. My name is Bill Toffanetti. I'm an assistant state attorney for Cook County. Mr. Toffanetti, was it appropriate for the trial court to consider the testimony of the co-defendant regarding what he took?  All right. Well, then tell me, what is the evidence that there was an armed robbery? What does that leave? What evidence does that leave? All right. What you have to do is look at all of the evidence presented and look at the inferences that come from that evidence. But just regarding the robbery, what is the evidence that you rely on? The evidence is the statement of intent that they made prior to the offense. And I think that was Justice McBride's point, that there isn't a case that exists that you can use a statement of intent in the past to prove some future conduct. Right. I mean, it doesn't make sense because there could have been a change of mind, and it didn't prove that. Nobody can say that the event actually happened. All right. Even if I was to concede that there's no direct evidence of a taking, that does not mean that the judge relied upon that statement. First of all, we did not offer that statement. Well, what did he rely on? What is the evidence that there was an armed robbery? Yeah. Anything taken from the victim? There is no direct evidence. All right. So what's the circumstantial evidence? Other than this inadmissible evidence. I'm asking you to take the light, the evidence that's the light most favorable to the people. All right. So let's go on to the next one, vehicular, estimated vehicular hijacking. What do you got on that one? Does it have, can vehicular hijacking occur with the owner or possessor of the vehicle remaining in the car? I mean, it seems like a basic question that is in dispute here. I thought it could, but I thought Justice McBride said it can't based on these other cases. Well, once again, I recognize that the current state of the law goes against this here. Oh, it does. That's right. When Cooksey was decided, I wrote a dissent, and that never got anywhere. That case, PLA denied, as I recall, many years ago. I'm sorry, Your Honor. PLA denied on Cooksey. Cooksey, and there's only a couple of others, not even a handful of cases on this particular statute. Well, I am asking this Court to take an expansive view of the statute. But you'll concede that Cooksey stands for the proposition that this case would fall under its holding? Yes. Okay. Yes. All right. What about the concealment? Yeah. What about the concealment of the homicide? What about the concealment? All right. You've got a couple of things going on there. First is, you have the statement of Brandon McCarter to his brother. Under that statement, there would not have been a concealment, because they shot and killed a defendant, and the car took off, because the car was already moving, and they jumped from a moving car. You could interpret that as an intent for having the car go down the ravine, because that's the way it was pointed. I mean, they didn't do this on an open road. They did this in a secluded area, and the car being pointed toward the ravine. Was it that secluded? I'm sorry? How can you say it was that secluded? I thought there was a woman that was delivering newspapers in the area. Right. Well, my next point is, there is reason not to believe that version of events. Now, it's up to the charge. Which version? The woman that was delivering the newspapers? No, no, no. Brandon McCarter's version to Ernest, which was then related. Oh, if they jumped out. Okay. Now, the woman stated that she saw that the car stopped with the two defendants, or two people, standing outside of it. That would lead us to believe that the car was standing still when they shot the defendant, or the victim, excuse me. And somehow, they caused that car to start rolling again, and again, pointed toward that ravine, pointed toward that wooded area where it went down behind this curtain of green into a deep ravine, but for the fact that it caught fire, would have remained there for at least quite some time. So under either one of those scenarios, you have them pointing the car toward the ravine and taking an action. The car ended up in that ravine and out of sight. What would be your most analogous case that you would reference to support that notion that this was clearly an attempt to conceal? It was a what now? An attempt to conceal. Your best case. My best case? There aren't a lot of cases on concealment. Well, there's certainly more than there are on aggravated vehicular hijacking. Well, one more would be, yes. I think you have to look at the facts. I think, you know, this was not a case where they just left them alone. In a light most favorable to the state. As always, yes. Let's say we were to take a different view of those charges than your office takes. What would be the consequences of that? Would you think that we can simply affirm first-degree murder and the sentence imposed on that without the need to? Well, we couldn't do anything else, I guess. Yes, I think that's exactly what we would do. I think that the evidence of first-degree murder is overwhelming. I think the evidence of aggravated kidnapping is overwhelming. I think that if the other three charges were to fall, their sentences would fall with them. But because they were consecutively sentenced, there's no reason to think that the murder was sentenced extra or that the kidnapping was given an extra sentence because of that. So I think that there would be a sentence reduction, but the sentences for those two crimes. And we know you're not conceding anything on these three other counts, but you certainly don't concede aggravated kidnapping. No, I do not. And you point out that there were a number of aggravated kidnapping charges that would stand regardless of the armed robbery falling. Well, if the armed robbery falls, then that count would fall with it. Weren't there other counts that were merged? Yes, there is one count where the kidnapping was based on simple kidnapping while armed with a firearm. And that is not dependent upon a predicate offense like armed robbery or particular hijacking. And the evidence of that is considerable. So there was an aggravated kidnapping based on the use of a firearm? Yes. But there was no sentence imposed on that count, was there? Well, that count, he was found guilty of all counts. And so that count merges. So you have a good count of aggravated kidnapping. If we find that count into which it was merged to be a bad count, does that revive the ---- As long as there's one good count. Okay. As long as there's one good count that the evidence supports beyond a reasonable doubt, then that count stands. But shouldn't it be remanded for resentencing? Is that what you're saying? Don't you think procedurally it should be remanded for resentencing? Our focus is on the sentence. On the one good count? If we were to conclude the armed robbery that there was not evidence of proof beyond a reasonable doubt of armed robbery, then your count of aggravated kidnapping based on armed robbery, which the judge sentenced the defendant on, would have to fall. Therefore, if there was a good count on aggravated kidnapping based on a gun, we would have to at least remand for the sentence to be imposed on that count. Or are you saying we could simply ---- He was given a single 10-year sentence for all the counts of armed robbery, which merged into one. Now, it doesn't really matter which one they merge into. They're all the same class of offenses. So as long as you have the one surviving count, which is all he's been sentenced on anyway, that count survives and the sentence could survive with it. There's no reason to think that the judge gave him extra time. I'm not talking about that. I'm talking about the sentence that was imposed for the aggravated kidnapping. If the armed robbery falls, then the aggravated kidnapping that was not merged is not the appropriate, it was not appropriately, there was no sentence appropriately entered on that, but that's not to say there wasn't a good count of aggravated kidnapping because you argue that there was an aggravated kidnapping based on simple kidnapping and the use of a gun. That makes it aggravated. True? Right. But you're saying that we don't need to revamp, that that would simply be a matter of what? Imposing a sentence on the count that isn't standing? It is standing. I mean, the sentence for the aggravated kidnapping ---- It was merged. I just believe procedurally ---- And here's one of the problems. Here's one of the problems. When the trial judge sentenced the individual on aggravated kidnapping based on armed robbery, those are, armed robbery seems like an aggravating situation, much more so than if it's simply simple kidnapping with the use of a firearm making it aggravated kidnapping. The one that he actually got 10 years on, that was aggravated kidnapping based on armed robbery, which makes it a far more serious offense, it seems like it. They're both class X offenses. There may be. But I think Justice McBride's point is that maybe the trial judge would have given 8 years instead of 10 on the simple kidnapping enhanced to aggravated kidnapping based on the use of a firearm. But without armed robbery. I think that's entirely speculative. Right. I don't think there's anything on the record. So should we resolve that speculation or should we simply send it back to the trial judge and let the trial judge reimpose 10 if he wants? Obviously I would prefer you resolve it in favor of the state here and now. Yes, of course. Whatever you're. All right. Let's, you can wrap it up. I've pretty much said everything. You've said everything you need to say. All right. And you agree that those statements should not have been considered? The statement that came through Lakeisha Johnson's testimony, the second half. Okay. Oh, that should, but the one of the co-defendant should not have. Right. The Jamie McArthur statement. Okay. That came through Lakeisha Johnson's statement. Right. But that was a statement of future intent to do something. Well. I'm going to take care of you. I'm going to get you a new car or I'm going to whatever. I'm going to rob so-and-so. Those are all. Insofar as Jamie McArthur said it, then it's inadmissible. But the defendant said it also. I mean, the defendant also made these kinds of statements. And those statements are admissible. What statements did Brandon make? He told her that, you know, we're going to take care of business. It's going down. He's going to give her a car. I mean, they both said these things. But there's no cases that say that that supports the element of an armed robbery that takes place later. I thought we'd be on. Yeah, we did. Okay. So I'm not just. I was just clarifying that. So, all right. Anything further? Unless Your Honor has questions. Thank you very much. Thank you. All right. Ms. Fortier, briefly. Sure. Just a couple of points, Your Honors. I'd like to go back to the aggravated kidnapping. I do not believe that aggravated kidnapping was proved here, even just with armed, not the armed robbery count. Because if you look at Smith, the four factors, three of them are not met, just like in Smith. The whole gist here was. Which Smith case are you referring to? I'm sorry. Peabody Smith, the First District, 91 LF 3rd 523. Okay. In that case, the two defendants got into a vehicle, made the defendant drive around for 20 minutes, robbed him, and they were convicted of armed robbery and aggravated kidnapping. But in that case, correct me if I'm wrong, the victim himself testified. As to what occurred. And we don't know what occurred here. What if the individuals in the car with Ms. Tobias said, close your eyes, keep your eyes closed the entire time. Well, I'm simply saying that you can't compare this case where the murder, where the victim himself cannot explain what happened, to a Smith case where the victim says exactly what happened. And the judge says, you know what? That wasn't kidnapping. Well, there's no evidence here that there was ever an intent to kidnap. It was all robbery or murder. That's when deference comes in. That's when we say, do we, taking the evidence in light most favorable to the state, can we simply say the offense wasn't proven? Let me go back to the aggravated kidnapping regarding whether, if we were to find that armed robbery doesn't apply, therefore undermining that aggravated kidnapping charge that the sentence wasn't imposed on. Right. And so that leaves the sentence, the aggravated kidnapping, that you don't agree with. But what do we do in that event? Would you find a problem if we simply said 10 years applies to that case? Charge two? Or should we remand it for a resentence? I would suggest, Your Honors, remand it for resentencing. As Your Honor pointed out, the court could find that the aggravated kidnapping with armed robbery is more severe than just armed with a weapon. So we would ask that Your Honor should remand that back for resentencing. As far as the concealment of a homicidal death goes, I know Your Honors are on the fence a little bit here, but I would hearken you back to People v. Bath. Only right now. In People v. Bath. We'll jump off the fence soon. People v. Bath was a similar situation, except for in that case it was completely isolated country road. Here, as Your Honor pointed out, it was not that secluded. A newspaper woman was driving around delivering newspapers. But in that case, on the country road, a victim was killed and left there, and they were convicted of the concealment of a homicidal death, which was reversed because they found there was no active steps taken to conceal the death. And I don't believe it here. There was any active steps taken to conceal the death. And what was that case again? People v. Bath. V-A-T-H. Fifth District. All right. Here's my last point regarding this case and the Jamie McCarter case. Yes. Surprisingly, or maybe not so, we didn't have to deal with all those, or that panel didn't have to deal with all these concealing of a homicide and aggravated kidnapping. That case was focused on the really major crime. Right, and the murder. And we would argue as well that the murder was not proven beyond a reasonable doubt here either. But in order for us to get there, we would have to discount how many witnesses again? Four? No, three witnesses who were all contradictory, inconsistent, unreliable, impeached, and unworthy of belief. Correct. All of them were. Not only one, but two, but three. All of them. All of them. Okay. It wasn't a difficult thing to do. That's all. Well, in conclusion, Your Honors, we would argue that the evidence here was so insufficient, you should reverse on all of the counts. Alternatively, if on issue two, we'd ask that Your Honors reverse and remand for a new trial. All right. Well, thank you very much. The case will be taken under advisory of the courts.